**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| ASHLEY B.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 3:25-cv-00253<br><br>Magistrate Judge Caroline H. Gentry<br>(by full consent of the parties) |

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in May 2022. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court **REVERSES** the Commissioner's decision and **REMANDS** for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I. BACKGROUND

Plaintiff asserts she has been disabled since November 15, 2021. At that time, she was twenty-four years old and considered a "younger person." 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7 at PageID 34-58), Plaintiff's Statement of Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 9), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 10). Rather than repeat these summaries, the Court will discuss the pertinent evidence below.

## II. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

"Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the

Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since November 15, 2021, the alleged onset date.

Step 2: She has the severe impairments of degenerative disc disease of the lumbar spine, anxiety, depression, post-traumatic stress disorder, autism, and borderline personality disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "(1) she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) she can stand and/or walk for about 4 hours and sit for about 6 hours in an 8[-] hour workday; (3) she can never climb ladders[,] ropes[,] and scaffolds; (4) she can frequently climb ramps and stairs, balance, stoop, kneel, crouch[,] and crawl; (5) she should avoid unprotected heights and dangerous machinery; (6) she can

perform simple routine tasks but not at a production rate pace and without strict performance quotas; (7) she is limited to occasional superficial contact with the general public, coworkers, and supervisors with 'superficial contact' defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice; (8) she can tolerate occasional changes to a routine work setting defined as 1-2 per week and those are explained in advance."

She is unable to perform any of her past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 7 at PageID 39-53.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability. (*Id.* at PageID 53.)

**B. Consultative Physician B.T. Onamusi, M.D.**

Dr. Onamusi performed a consultative physical examination in October 2022. (AR, Doc. No. 7 at PageID 518-25.) Dr. Onamusi documented Plaintiff's subjective report of her functional limitations, as follows:

> [Plaintiff] can sit for two to three hours, stand for up to one hour and walk four blocks. [Plaintiff] can lift or carry 10 pounds. [Plaintiff] is unable to bend because of the pain. [Plaintiff] does not do housework because of difficulty bending as a result of back pain. [Plaintiff] does not do laundry and grocery shopping because of difficulty bending as a result of back pain. [Plaintiff] can do personal grooming activities. [Plaintiff] does not drive. [Plaintiff] has no trouble using the hands.

(*Id.* at PageID 524.) He also documented neurological and musculoskeletal findings:

> **[Central Nervous System]:** … Muscle power and tone were normal in all muscle groups. Reflexes in the ankles, knees, elbows and wrists were 2+ and symmetrical. Ankle clonus was absent. Babinski sign was negative, bilaterally. Sensation to light touch and pain was preserved in all

> extremities. Vibration sense and proprioception was intact in all extremities. Romberg sign was negative and there were no cerebellar or extrapyramidal signs. **Extremities:** No pedal edema, and peripheral pulses were not diminished. **Musculoskeletal:** She exhibited extreme pain behavior, moaning, groaning, and grimacing all through the exam. She came in with a cane and was barely able to take a step without the cane. With the cane, she was very slow and intermittently will appear unsteady. She had a lot of pain behavior lying supine on the table and getting back up from supine position. She was not requested to squat or walk on the heels or on the toes. She was able to do full active range of motion in all the joints of the extremities, but with a lot of pain behavior. She was intolerant of light palpation to any of the affected extremity joints. She also declined lumbar range of motion and had disproportionate pain response to light palpation in the lower lumbar spine. She had positive axial compression test with pain response on simulated rotation and disproportionate pain response to light touch to the skin. She was able to grip and grasp with both hands. Grip strength in the right hand was 5 lbs. and 5 lbs. in the left hand. She was able to reach forward, push or pull with the upper extremities. She was able to use the hands for fine coordination and manipulative tasks; she was able to tie knots, do buttons, do shoelaces, pick up coins, hold pens, turn door handles, pull zippers and do fine fingering movements.

(*Id.* at PageID 524-25.)

Dr. Onamusi concluded that Plaintiff had chronic back and polyarticular pain "with signs of symptom magnification." (AR, Doc. No. 7 at PageID 525.) When asked to provide his medical opinion, he wrote: "My evaluation indicated that [Plaintiff's] subjective symptom reports were consistent with physical examination findings. Considering the extreme pain behavior, it was not possible to objectively determine [Plaintiff's] functional capabilities." (*Id.*) [2]

[2] Given this statement, the Court concludes that Dr. Onamusi did not offer a "medical opinion" about Plaintiff's work-related functioning. *See* 20 C.F.R. § 404.1513(a)(2) (a "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions).

The ALJ found Dr. Onamusi's report to be "somewhat persuasive." (Decision, Doc. No. 7 at PageID 48.) The ALJ found Plaintiff's statements about her ability to sit, stand, walk and lift to be "somewhat persuasive," although they "contradict[] [her] statements at the hearing and with her physical care providers." (*Id.*) The ALJ also found Plaintiff's statement that she was unable to bend to be "somewhat persuasive" and noted that "a full assessment of her ability to bend and functional capabilities was not possible due to [Plaintiff's] refusal for a portion of the examination." (*Id.*) The ALJ compared Plaintiff's statements to other examination findings in the record:

> However, there is no extreme change in her physical examinations between 2021 and 2024 and they found in February of 2024 that her lumbar flexion was 40% and her extension was 20% (10F). She had a positive straight leg raise test bilaterally. However, she had a normal and tandem gait, and was able to walk heel to toe. Her neurological examination was normal. Additionally, the doctor performed a Gaenslen's test used to detect inflammation and musculoskeletal abnormalities, sciatica, spondyloarthritis, and other forms of rheumatism. It was negative in both the left and right lower extremity (10F).

(*Id.*)

The ALJ explained that Dr. Onamusi's report was "supported by the examination [that Plaintiff] allowed him to complete, but it was also impeded by claimant both physically and through what appeared to be magnified symptomology." The ALJ further reasoned: "The information that he did glean from [Plaintiff] and his examination demonstrates inconsistencies with the physical findings of her care providers. However, this supports Dr. Onamusi's findings that her symptomology is more magnified by [Plaintiff] than her physical examination demonstrates." (*Id.* at PageID 48-49.)

**C. State Agency Medical Consultants**

State agency medical consultant Elaine Lewis, M.D. completed a Disability Determination Explanation Form in December 2022. (AR, Doc. No. 7 at PageID 89-94.) Dr. Lewis opined that Plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk for a total of approximately six hours in an eight-hour workday, and sit for approximately six hours in an eight-hour workday. (*Id.* at PageID 93.) Dr. Lewis opined that Plaintiff could frequently balance, kneel, crouch, and crawl, and only occasionally stoop and climb ramps and stairs. (*Id.*) She also opined that Plaintiff could never climb ladders, ropes, or scaffolds and should avoid all exposure to hazards, including hazardous machinery and unprotected heights. (*Id.* at PageID 93-94.)

Mehr Siddiqui, M.D. reviewed the updated record and completed a Disability Determination Explanation form at the reconsideration level in April 2023. (AR, Doc. No. 7 at PageID 100-05.) Dr. Siddiqui concurred with and adopted the exertional and non-exertional limitations identified by Dr. Lewis. (*Id.* at PageID 104-05.)

The ALJ found the consultants' opinions to be "somewhat persuasive" because they "are supported by the records they reviewed. They are consistent with each other and … Dr. Onamusi, as well as the examinations done by her primary care providers." (Decision, Doc. No. 7 at PageID 49.) The ALJ apparently relied upon this explanation to adopt the consultants' opinion that Plaintiff could lift up to 10 pounds frequently and 20 pounds occasionally. (*Id*. at PageID 49-50.) The ALJ also explained why he adopted more restrictive standing/walking limitations (up to 4 hours rather than up to 6 hours of an 8-hour workday) and less restrictive limitations for climbing ramps and stairs. (*Id.*)

## IV. LAW AND ANALYSIS

Plaintiff asserts that the ALJ "failed to build a logical and accurate bridge between the evidence and some of his conclusions." (SE, Doc. No. 8 at PageID 773.) Specifically, Plaintiff asserts that the ALJ erred by concluding that Plaintiff: (1) did not need an ambulatory assistive device, and (2) could lift and/or carry up to twenty pounds occasionally. (*Id.* at PageID 773-75.) Finding error in the ALJ's analysis of Plaintiff's lifting and carrying limitation, the Court does not address the ambulatory assistive device issue and instead instructs the ALJ to address both issues on remand.

### A. Applicable Law

It is well-established that determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

The ALJ is required to consider evidence from the entire relevant time period when formulating the RFC. *E.g., White v. Comm'r of Soc. Sec.*, No. 3:21-cv-762, 2022 U.S. Dist. LEXIS 140674, *47 (N.D. Ohio June 1, 2022) (Knapp, M.J.), *aff'd* 2022 U.S. Dist. LEXIS 139178 (N.D. Ohio Aug. 4, 2022) (Knepp, D.J.). As Magistrate Judge Knapp explained, "[w]hile the substantial evidence standard is deferential, the Sixth Circuit has emphasized that the chief limitation to that deference 'is the requirement that all determinations be made based upon the record in its entirety.'" 2022 U.S. Dist. LEXIS 140674, *47 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007)). Thus, an ALJ should not "unduly concentrate on one single aspect of the claimant's history." *Rogers*, 486 F.3d at 249.

Notably, "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1546(c)). An ALJ is required to consider medical opinion evidence when determining the RFC, but is not required to adopt them or adopt any such findings verbatim. *Poe*, 342 F. App'x at 156-57 (6th Cir. 2009). In addition, "[t]he determination of a plaintiff's RFC is entirely within the purview of the ALJ, and this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and citation omitted) (Preston Deavers, M.J.).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of the SSA*, No. 3:21-CV-00129, 2022 U.S. Dist. LEXIS 175673, at *11 (S.D. Ohio Sept.

27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning ... in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

**B. The ALJ's RFC Is Not Supported by Substantial Evidence.**

The Court concludes that the ALJ's RFC is not supported by substantial evidence because the ALJ did not build a logical bridge between his decision to adopt the state agency medical consultants' lifting/carrying limitation and the medical and other evidence in the record. The ALJ's decision will therefore be reversed and remanded.

Defendant argues that the ALJ did, in fact, build a logical bridge between the evidence and his RFC limitation for lifting and/or carrying twenty pounds occasionally and ten pounds frequently. (Mem. In Opp., Doc. No. 9 at PageID 780.) Defendant

identifies four reasons why "the ALJ considered the record regarding Plaintiff's pain complaints in detail." (*Id.* at PageID 784-85.) According to Defendant: "This evidence, when considered as a whole, showed that Plaintiff's lifting or carrying abilities were not as limited as alleged." (*Id.* at PageID 785.) None of these arguments is well-taken.

First, Defendant argues that when the ALJ considered the record regarding Plaintiff's pain complaints, the ALJ "outlined treatment notes showing ***no*** examination findings that would preclude the ability to lift up to 20 pounds (Doc. No. 7, PageID 40-42)." (Mem. In Opp., Doc. No. 9 at PageID 784 (emphasis added).) This is incorrect, as some examination findings cited by the ALJ reasonably support Plaintiff's allegations about her lifting/carrying limitations. For example, the ALJ acknowledged that a January 2021 lumbar spine MRI showed a left paracentral disc protrusion at the L5-S1 level, albeit with no nerve impingement, and that a January 2024 lumbar spine MRI showed a tiny central disc protrusion at L2-L3 and a small broad-based disc protrusion at L5-S1.[3] (Decision, Doc. No. 7 at PageID 40 (citing AR, Doc. No. 7 at PageID 445-47, 732-33.) And although the ALJ cited normal findings such as normal straight leg raising, normal sensation, full muscle strength, negative Gaenslen's testing, and a normal gait, the ALJ also cited abnormal physical findings such as musculoskeletal tenderness, decreased

[3] The ALJ discussed much of the evidence about Plaintiff's physical impairments at Step Three (Finding Number 4) and in the medical evidence discussion of the RFC analysis. (*See* Decision, Doc. No. 7 at PageID 40-42, 46-48.) This Court is permitted to consider the ALJ's evaluation of the evidence at other steps of the decision to determine how to "credit the evidence at issue in this appeal." *See, e.g., Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x. 426, 435 (6th Cir. 2014); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016). Accordingly, this Court will consider the ALJ's analysis of Plaintiff's impairments in Step Three and the RFC analysis when evaluating Plaintiff's assignment of error.

lumbar range of motion, decreased strength, and positive strait leg raising. (*Id.* at PageID 41-48.) These findings could reasonably support Plaintiff's subjective complaints.

Second, Defendant contends that Dr. Onamusi's report supports the lifting and carrying limitations in the RFC. Defendant first argues that Dr. Onamusi "stated that Plaintiff had the grip strength for 5 pounds, but also noted her statements that she could lift 10 pounds, and included other findings that were normal, including range of motion testing throughout the upper extremities." (Mem. In Opp., Doc. No. 9 at PageID 784.) But none of these statements reasonably supports the ALJ's conclusion that Plaintiff can occasionally lift and carry twenty pounds. And although the ALJ cited some of Dr. Onamusi's physical examination findings (*see* Decision, Doc. No. 7 at PageID 42, 48), the ALJ did not explain how those findings support the light-level lifting and carrying limitations in the RFC.

Defendant also argues that Dr. Onamusi observed "signs of symptom magnification" such as "display[ing] a lot of pain behavior even lying supine on the table and ha[ving] a disproportionate pain response to light touch to the skin." (Mem. In Opp., Doc. No. 9 at PageID 784.) It is true that the ALJ cited Dr. Onamusi's reference to "symptom magnification" as one reason why Plaintiff's testimony "was not consistent with the objective medical evidence in the file." (Decision, Doc. No. 7 at PageID 47 (citing AR, Doc. No. 7 at PageID 525).) Nevertheless, the ALJ did not explain why this evidence, which seemingly contradicted Plaintiff's statements about her functional limitations, translated into an ability to occasionally lift and carry up to twenty pounds.

Accordingly, the Court finds that the ALJ's discussion of Dr. Onamusi's report does not build a logical bridge between the evidence and the RFC's lifting and carrying limitation.

Third, Defendant argues that the ALJ's lifting and carrying limitation is supported by "the findings of state agency medical consultants, Drs. Lewis and Siddiqui, who opined in December 2022 and April 2023 respectively that Plaintiff could perform light work with the ability to lift and/or carry up to 20 pounds." (Mem. In Opp., Doc. No. 9 at PageID 784.) The ALJ did state that he was "somewhat [persuaded]" by the consultants' findings because they were "supported by the records they reviewed." (Decision, Doc. No. 7 at PageID 49.) But the ALJ did not elaborate upon this broad assertion, and it is unclear what records supported the consultants' findings. Given the absence of a further explanation, the ALJ did not articulate with specificity the reasons for his conclusion and this Court was thereby "deprive[d] … of the ability to conduct any meaningful review." *Edwards v. Comm'r of Soc. Sec.*, No. 3:22-CV-00597, 2023 WL 2988373, at *15 (N.D. Ohio Mar. 10, 2023), *report and recommendation adopted sub nom. Edwards v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-597, 2023 WL 3866333 (N.D. Ohio June 7, 2023) (citing *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09cv564, 2011 WL 549861, at *5 (S.D. Ohio Feb. 8, 2011) (Barrett, D.J.)).

The ALJ also reasoned that the consultants' findings were "consistent with each other and … Dr. Onamusi." (Decision, Doc. No. 7 at PageID 49.) This statement is inaccurate, as the lifting and carrying limitations identified by the consultants are ***not*** consistent with Dr. Onamusi's report. As stated, Dr. Onamusi documented Plaintiff's subjective report that she could only lift or carry ten pounds, and reported that Plaintiff's

bilateral grip strength was five pounds in each hand. (AR, Doc. No. 7 at PageID 524-25.) This evidence is inconsistent with the consultants' opinion that Plaintiff could lift and carry up to twenty pounds occasionally, which means "from very little up to one-third of the time." (SSR 83-10, 1983 WL 31251 (S.S.A. Jan. 1, 1983)). And although the ALJ addressed the other exertional and postural limitations in the RFC, he did not address the lifting/carrying limitation. (*See* Decision, Doc. No. 7 at PageID 49.)

Fourth, Defendant contends that the ALJ built a logical bridge because he "noted Plaintiff's conflicting statements about her functional abilities, which included her ability to lift." (Mem. In Opp., Doc. No. 9 at PageID 784 (citing Decision, Doc. No. 7 at PageID 47).) However, the ALJ noted only one inconsistency about Plaintiff's lifting ability: "At first [she] stated she could lift 5 pounds, but then agreed that she can lift 8 pounds, about the size of a gallon of milk." (Decision, Doc. No. 7 at PageID 47.) Neither statement shows that Plaintiff can lift up to twenty pounds. And although the ALJ stated that Plaintiff's testimony "was not consistent with the objective medical evidence in the file" (*id.*), he did not cite examples of inconsistent evidence about Plaintiff's lifting abilities.

To the contrary, the ALJ cited several records that documented Plaintiff's reports to providers that were ***consistent*** with her testimony about how much she could lift and carry. For example, the ALJ noted Plaintiff's statement to a provider in February 2024 that she could only lift ten pounds. (Decision, Doc. No. 7 at PageID 41, 47 (citing AR, Doc. No. 7 at PageID 685).) The ALJ also cited Plaintiff's report to consultative physician Dr. Onamusi in October 2022 that she could lift just ten pounds, as well as Dr. Onamusi's note that Plaintiff's grip strength in both hands was five pounds. (*Id.* at

PageID 41-42, 48-49 (citing AR, Doc. No. 7 at PageID 524-25).) The ALJ's failure to address and resolve the conflict between this evidence and the RFC's lifting and carrying limitation further demonstrates that the ALJ did not build a logical bridge between the evidence in the record and his conclusions.

**C. The ALJ's Error Is Not Harmless.**

The ALJ's failure to explain the basis for the lifting and carrying limitation in the RFC is not harmless. If the ALJ finds that a plaintiff's RFC prevents the performance of past relevant work, the burden shifts to the Commissioner to show that Plaintiff is able to "perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citations omitted). To meet this burden, the ALJ must find that a plaintiff has the "vocational qualifications to perform specific jobs," and this finding must be "supported by substantial evidence." *O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978) (citation omitted). An ALJ may also rely on the testimony of a vocational expert (VE). 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e). "Substantial evidence may be produced through reliance on the testimony of a VE in response to a 'hypothetical' question, but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Varley*, 820 F.2d at 779 (6th Cir. 1987) (citations omitted).

Here, the record does not clearly indicate that stricter RFC limitations would *not* be work-preclusive. The VE testified at the April 2024 hearing that an individual with Plaintiff's vocational profile (i.e., the same age, education, and work history) and the RFC identified in the Decision would be unable to perform Plaintiff's past relevant work

but could perform other jobs in the national economy. (AR, Doc. No. 7 at PageID 82-83.) The ALJ cited these jobs to support his conclusion that Plaintiff was "not disabled" at Step Five. (Decision, Doc. No. 7 at PageID 52.) However, the ALJ did not ask the VE whether such an individual—but with a more restrictive limitation for lifting and carrying no more than ten pounds—could perform other jobs in the national economy. (*See* AR, Doc. No. 7 at PageID 82-86.) As discussed above, the evidence in the record could support such a limitation. And "[i]t is the ALJ, not the court, who must determine what jobs can be performed by a plaintiff in light of her limitations." *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-CV-3820, 2021 WL 3087639, at *6 (S.D. Ohio July 22, 2021) (Vascura, M.J.), *report and recommendation adopted*, No. 2:20-CV-3820, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021) (Watson, D.J.) (citation omitted). Therefore, the ALJ's error is not harmless, and reversal is required.

## V. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to Plaintiff's subjective complaints and her physical limitations, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 8) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge